Affidavit of Aryeh Goodman

<u>In Support of Writ of Habeas Corpus</u>

State of New Jersey    )
                       )  ss
Burlington County      )

I, Aryeh Goodman, being of the age of the Majority and being sound in mind and body, am competent to make this Affidavit and do swear before G-d Almighty and Affirm under penalty of perjury that the following is true and correct from my personal knowledge and personal experience, and where I quote or reference another; I believe that quote or reference to be correct and true, thus duly sworn; depose, and says:

**NOTICE**: This Affidavit is made in good faith and not for injury to anyone or their commercial interest.

(1) "Enacted on December 21, 2018, the First Step Act (FSA; hereinafter "The Act") was the result of a bipartisan legislative effort to moderately overhaul the criminal justice system ... Congress aimed to enhance public safety by improving the effectiveness and efficiency of the federal prison system with offender risk and needs assessment, individual risk reduction incentives and rewards, and risk and recidivism reduction. HR Rep. No. 115-699 at 22 (2018)." See <u>United States v. Simmons</u>, 375 F. Supp. 3d 379 (2nd Circuit, 2019). The Act authorized:

1.1 "§3632(a). Not later than 210 days after the date of enactment of this Subchapter [July 19, 2019], the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website, a Risk and Needs Assessment System, which shall be used to --
§3632(a)(1) Determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having a minimum, low, medium, or high risk of recidivism."

1.2 On 11-6-19, Petitioner self-surrendered to JBMDL NJ custody on a federal sentence of 18 months. He had already been credited by the U.S.D.C. with 25 days of jail credits.

1.3 On 11-26-19, Federal Bureau of Prisons ("FBOP") via JBMDL NJ's Case Manager Brian Vogt, conducted the initial Risk and Needs Assessment via the Prisoner Assessment Tool Targeting Estimated Risk and Need (PATTERN) tool, and I was determined to have a "LOW" risk of recidivism. Therefore, I am in full compliance of the above subchapter.

(2) Next, Case Manager Brian Vogt completed The Act's determination and assignment of Evidence-Based Recidivism Reduction Programming of the Risk and Needs Assessment System.

    2.1 "§3632. [D]etermine the type and amount of Evidence-Based Recidivism Reduction Programming that is appropriate for each prisoner, and assign each prisoner to such programming accordingly."

    2.2 On multiple occasions, including the 11-26-19 and 1-20-20 Unit Team Meetings, Case Manager Brian Vogt determined and assigned Evidence-Based Recidivism Reduction Programming and Productive Activities for me to participate in; Unicor Prison Industries, Religious classes and services, Parenting classes, Transition of Prisoner to Community (TPC) courses, Adults Continuing Education (ACE) classes, and the Non-Residential Drug Addiction Program (NRDAP). A copy of the records given to me at the conclusion of the Unit Team Meetings is attached as Exhibit 1.

(3) Case Manager Brian Vogt informed me on 11-26-19 that his assignment met §3635(3) requirements of The Act.

    3.1 "§3635(3). The term Evidence-Based Recidivism Reduction Programming means either a group or individual activity that --

        (A) has been shown by empirical evidence to reduce recidivism or is based on research indicating that its likely to be effective in reducing recidivism;

        (B) is designed to help prisoners succeed in their communities upon release from prison; and

        (C) may include --

            (iv)   academic classes

            (vii)  substance abuse treatment

            (viii) vocational training

            (ix)   faith-based classes or services

            (xi)   a prison job, including through a prison work program"

    3.2 Per Case Manager Brian Vogt's assignment, I have successfully participated and continue to participate in Evidence-Based Recidivism Reduction Programming as follows --

        (1) Faith-based services, three times daily, along with two hours of Bible study per §3635(3)(c)(ix) of The Act;

12

  (2) Unicor Prison Industries (manufacturing US Military apparel and uniforms) per §3635(3)(c)(xi) of The Act and listed by the FBOP in its official publication on page 1 of Evidence-Based Recidivism Reduction Programs and Productive Activites;

  (3) NRDAP per §3635(3)(c)(vii) of The Act and page 2 of the FBOP publication;

  (4) Parenting classes per §3635(3)(c)(ii) of The Act and page 1 of the FBOP publication;

  (5) Completion of 11 TPC vocational classes per §3635(3)(c)(viii) of The Act and page 1 of the FBOP publication; and

  (6) ACE classes per §3635(3)(c)(x) of The Act and page 4 @ "SMART MONEY" of the FBOP publication

3.3  A copy of the official Federal Bureau of Prisons Evidence-Based Recidivism Reduction Programs and Productive Activities publication, along with the "Inmate Education Data Transcript," emails, and progress report, which reflects my programming participation, is attached as Exhibit 2.

(4) The Act provides at:

    4.1 "§3632(d)(4)(A). A prisoner ... who successfully completes Evidence-Based Recidivism Reduction Programming or Productive Activities, shall earn time credits as follows:

        (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in Evidence-Based Recidivism Reduction Programming or Productive Activities

        (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk of recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in Evidence-Based Recidivism Reduction Programming or Productive Activities."

    4.2 Case Manager Brian Vogt completed the second consecutive Risk and Needs Assessment PATTERN score on 5-13-20; and again determined that I am a "LOW" risk of recidivism under First Step Act eligibility; which triggers a grant of an "additional 5 days of time credits for every 30 days of successful participation in Evidence-Based Recidivism Reduction Programming or Productive Activities" under The Act, vesting me with a total of 15 days credit for every 30 days of programming.

14

4.3 At every evaluation, FBOP via JBMDL NJ's Case Manager Brian Vogt, refused my request for a copy of his Assessment of me, and would only provide his handwritten signature as proof of my "LOW" status. Copy of said signature is attached hereto as Exhibit 3.

4.4 I have been successfully participating in The Act's authorized Evidence-Based Recidivism Reduction Programming and Productive Activities since my self-surrender on 11-6-19. Continuing this conduct, on 7-5-20, I will have programmed for 240 days and, pursuant to The Act's grant of a right to earn dimunition credits that reduce my time in captivity by programming, I will have earned 120 days of The Act's grant of time credits (8 months x 15 days = 120 days).

(5) Under The Act, application of time credits must go towards release from prison captivity, to wit: to Prerelease Custody or Supervised Release; namely:

    5.1 "§3632(d)(4)(C).  Time credits earned under this paragraph by prisoners who successfully participate in Evidence-Based Recidivism Reduction Programming or Productive Activities <u>shall</u> be applied towards time in Prerelease Custody or Supervised Release."

    5.2 Accordingly, by The Act, my vested earned time credits from continuing Evidence-Based Recidivism Reduction Programming and Productive Activities through 7-5-20, will have vested me 120 days of earned time credits equal to 4 months off my incarceration, and release me to either Prerelease Custody in Home Confinement or in a Residential Reentry Center or directly to Supervised Release is thereby mandatory. But once again, the FBOP through JBMDL NJ's Case Manager Brian Vogt, I am told The Act has no force in the State of New Jersey, except as JBMDL NJ deems it in the institution's interest.

    5.3 And further, The Act requires:
"Sec. 102 §3621(g)(3).  If the Sentencing Court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of Supervised Release

16

after imprisonment ... the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of Supervised Release at an earlier date ... based on the application of time credits under Section 3632."

5.4  My sentence included a 1-year term of Supervised Release and under application of The Act, makes transfer to Supervised Release the highest application of earned time credits. This application is my due process protected liberty interest in rights granted by the federal law evidenced by The Act.

5.5  "§3632(d)(6). In addition, the incentives described in this Subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible."

5.6  Case Manager Brian Vogt informed me the Second Chance Act of 2007's Prerelease Custody provision is incorporated in The Act, and pursuant to that grant, Case Manager Brian Vogt did in fact assign me "0 to 90 days Reentry Center placement"; with The Act requiring the maximum amount of time, to wit: 90 days, to be allotted to me. See §3624(c)(2). See also a copy of Home Confinement Placement attached hereto as Exhibit 4.

17

(6) The Act establishes the unambiguous time table for FBOP actions:

    6.1  Section 102 of The Act states:

        Implementation of System and Recommendations by the Bureau of Prisons.

        "§3631(h)(1). Not later than 180 days after the Attorney General completes and releases the Risk and Needs Assessment System [January 15, 2020] ... the Director of the Bureau of Prisons shall ...

        (B) begin to expand the effective Evidence-Based Recidivism Reduction Programming or Productive Activities it offers ... necessary to effectively implement the 'System.'"

    6.2  The Act made clear that the January 15, 2020, date is when the "System" must be implemented. Nevertheless, the FBOP through JBMDL NJ's Case Manager Vogt has repeatedly refused to apply and enforce application of my right to my earned time credits. The effective date of The Act was even earlier than the January 15, 2020, date, namely: July 19, 2019. And this fact is clear and unambiguous in The Act:

        "Sec. 102 §3631(b)(2). The Amendment made by this Subsection shall take effect beginning on the date that the Attorney General completes and releases the Risk and

18

Needs Assessment System [July 19, 2019] under Subchapter D of Chapter 229 of Title 18, United States Code, as added by Section 101(a) of this Act."

6.3 To further support the aforementioned date of January 15, 2020, as the mandatory implementation date for the earned time credits, a memo dated January 15, 2020, purporting to be from the "Office of Public Affairs," states:

https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act

"Today is another milestone in implementing the First Step Act," said Attorney General William P. Barr. "Beginning today, inmates will have even greater incentive to participate in Evidence-Based Programs that prepare them for productive lives after incarceration. This is what Congress intended with this bipartisan bill." ... "As of January 15, 2020, inmates will be assigned to participate in Evidence-Based Recidivism Reduction Programs and Productive Activities based on an initial needs assessment conducted by the BOP. Participation and completion of those assigned programs and activities can lead to placement in Prerelease Custody or a 12-month sentence reduction under the First Step Act." ... "In the interim, inmates will continue to

19

      be assigned to programs and activities based on their risk and needs and if eligible, will receive credit upon completion."

6.4  My eligibility was established and confirmed by Case Manager Brian Vogt's handwritten assessment determination, "FSA Eligible." See Exhibit 3.

7.1  Then unbeknownst to me Newspapers were already making public Attorney General of the United States's application of First Step Act diminution credits in releasing citizen federal inmates from Federal Prisons to their Supervised Release custody of a USDC's judgment sentence of imprisonment; such as was reported in the Wall Street Journal, dated: "**May 21, 2020**", the Journal reported:

> "NEW YORK
> Trump Ex-Lawyer Cohen
> to Be Released"
>
> "Michael Cohen will be released from prison.... Prison officials have said they are giving priority to those who have served at least half of their sentence, or who have 18 months or less left and have served 25% of their terms.
>
> Mr. Cohen has served about a year of the three-year term. He qualifies, however, because he has earned 162 days of good-conduct credit, moving up his release date to **Nov. 22, 2021**, the person familiar with the matter previously said."

A true and correct Copy of said Wall Street Journal news report is attached hereto as **EXHIBIT 7**.

20

7.1  Accordingly, per News Reports such as the Wall Street Journal report cited above in pertinent part, (<u>see</u>: **EXHIBIT 7**) my accrued diminution Credits as calculated and verified by Case Manager Vogt, <u>**to wit**</u>: **good-time credits, earned time credits, and special awarded diminution credits**, all made applicable by the First Step Act.

7.2  WHEREFORE, as my qualification for and participation in FBOP programing and educational activities particularly desginated and assigned me to obtain diminution credits by Case Manager Vogt himself, as well as public records via News Reports verifying such diminution credits are being awarded and calculated under the First State Act resulting in actual early release from incarceration of federal inmates; named Immediate Custodian's herein refusal to calculate my credits, unlawfully restrains me of my personal federal civil right of liberty under the 14th & 5th Amendments due process and equal protection guarantee of the Federal Constitution for my 7/5/20 date.

Date: June 15, 2020

_____
Aryeh Goodman

**NOTARY**

SUBSCRIBED AND SWORN BEFORE ME this 15th day of June 2020, County Burlington, State New Jersey.

RAISED SEAL

SHONDEL A. BOYD
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 8/9/2023

NOTARY
In and For State of:
New Jersey
My Commission expires:

21