# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

ARYEH GOODMAN,

    *Petitioner*,

v.

DAVID ORTIZ,

    *Respondent*.

No. 20 Civ. 7582-RMB

## PETITIONER'S REPLY TO RESPONDENT'S
## ANSWER TO PETITION FOR A WRIT OF HABEAS CORPUS

Thomas R. Valen
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
Email: tvalen@gibbonslaw.com

E. Danya Perry*
Samidh Guha*
Peter A. Gwynne*
**PERRY GUHA LLP**
35 East 62nd Street
New York, New York 10065
Telephone: (212) 399-8330
Email: sguha@perryguha.com
Email: dperry@perryguha.com
Email: pgwynne@perryguha.com

*Attorneys for Petitioner Aryeh Goodman*
*\*Application for pro hac vice forthcoming*

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ..................................................................................1

II.  ARGUMENT.................................................................................................................3

    A.   Section 3621 of the Act Is Operative and Is Not Stayed or Postponed by the Two-Year Deadline by Which It Is to Be Extended to "All Prisoners" ........................................................................................3

        1.   Respondent Does Not Dispute That Rabbi Goodman Has Completed Earned Sentencing Credit Programming .................................3

        2.   Statutory Interpretation Standard of Review ...............................................4

        3.   The Act's Plain Language Entitles Qualifying Prisoners to Receive Credit Beginning January 15, 2020, Not January 15, 2022.........................................................................................................5

        4.   The Placement of the Provision in the Statutory Scheme Is Consistent with Petitioner's Interpretation ....................................................6

        5.   The Interpretation of the Statute by the Attorney General and the BOP is Consistent with Petitioner's Interpretation and Contrary to Respondent's........................................................................7

    B.   There is No Exhaustion Requirement in this Case ..................................................8

        1.   Petitioner Appealed his BP-9 and Was Ignored .........................................9

        2.   Rabbi Goodman Faces Irreparable Harm Due to His Unlawful Imprisonment and the Resulting Violation of his Constitutional Rights ...................................................................................10

        3.   The Issue Presented Is Limited Only to the Interpretation of 18 U.S.C. § 3621(h) ..................................................................................10

        4.   Additional Administrative Appeals Would be Futile ................................11

    B.   The Court Should Release Rabbi Goodman During the Pendency of This Petition, Which It Also Should Hear on an Expedited Schedule..................................................................................................................11

III. CONCLUSION............................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Beattie v. Line Mountain Sch. Dist.*,
   992 F. Supp. 2d 384 (M.D. Pa. 2014) ..................................................................................10

*Bowling v. Hudgins*,
   No. 5:19-cv-285, 2020 WL 1918248 (N.D.W. Va. Mar. 16, 2020) ..........................................6

*Brown v. Rison*,
   895 F.2d 533 (9th Cir. 1990) .................................................................................................8

*Buck v. Stankovic*,
   485 F. Supp. 2d 576 (M.D. Pa. 2007) ..................................................................................10

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ..............................................................................................................4

*Connecticut Nat. Bank v. Germain*,
   503 U.S. 249 (1992) ..............................................................................................................4

*Hensley v. Municipal Court*,
   411 U.S. 345 (1973) ............................................................................................................11

*Herring v. Joseph*,
   No. 4:20-cv-249, 2020 WL 3671375 (N.D. Fla. June 22, 2020) .............................................6

*Holloway v. U.S.*,
   526 U.S. 1 (1999) ..................................................................................................................4

*Jones v. Ortiz*,
   No. 2:19-cv-451, 2019 WL 2376158 (D.N.J. June 5, 2019) ........................................5, 9, 10

*Kingdomware Techs., Inc. v. United States*,
   136 S. Ct. 1969 (2016) ..........................................................................................................5

*Kurti v. White*,
   No. 1:19-cv-2109, 2020 WL 2063871 (M.D. Pa. Apr. 29, 2020) ............................................9

*Madigan v. McCarthy*,
   503 U.S. 140 (1992) ..............................................................................................................9

*U. S. ex rel. Taylor v. Redman*,
   500 F. Supp. 453 (D. Del. 1980) ....................................................................................10, 11

**Rules & Statutes**

U.S. Const. amend. V..................................................................................................................10

18 U.S.C. § 3621............................................................................................................... *passim*

18 U.S.C. § 3632...................................................................................................................3, 4

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194....................................................1, 7, 8

**Other Authorities**

*Department of Justice Announces Enhancements to the Risk Assessment System
    and Updates on First Step Act Implementation* (Jan 15, 2020) ..................................................7

Petitioner Rabbi Aryeh Goodman respectfully submits this memorandum of law and his accompanying declaration ("Reply Decl.") in reply to the Answer to Petition for a Writ of Habeas Corpus (the "Answer") submitted by Respondent, the warden of the Federal Correctional Institution at Fort Dix, New Jersey.

## PRELIMINARY STATEMENT

Having fully complied with the plain terms of the First Step Act,[1] Rabbi Goodman should have been released from incarceration almost forty-five days ago. The straightforward, mechanical application of the Act provides earned sentencing credit for prisoners who complete certain qualifying "evidence-based recidivism reduction programs" ("Programs" or "Programming"). Rabbi Goodman is just such a prisoner. He began to participate in Programming by January 15, 2020 and diligently completed this Programming such that his release date should have been advanced to on or about July 5, 2020. Respondent does not deny that Rabbi Goodman completed this Programming. Yet, Rabbi Goodman remains in prison, suffering irreparable harm with each day that passes, in violation of Congress' express statutory directive and of his constitutional rights.

Respondent does not contest any of the predicate facts relating to Rabbi Goodman's satisfaction of the Act's requirements, warranting his release. Instead, Respondent suggests first that the statute permits the Bureau of Prisons ("BOP") to disregard the eligibility of prisoners like Rabbi Goodman for immediate release because, it argues, the BOP's obligations to implement Programming to all prisoners does not take effect until January 15, 2022. While it is clear that the

---

[1] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194 (codified as amended in scattered sections of 18 U.S.C. and 34 U.S.C.) (the "Act").

1

Act requires that *all* Programming for *all* prisoners must be fully implemented by 2022,[2] it is equally clear from its express statutory language that certain Programming for qualified prisoners, and the application of credit earned as a result, was to commence on January 15, 2020.[3] Both the Attorney General and the BOP itself have made statements supporting this interpretation. Respondent bizarrely mistakes the Act's deadline for the government to complete the process of providing every last prisoner with the opportunity to qualify for a reduction of sentence as permission to overincarcerate certain prisoners like Rabbi Goodman who already have qualified for reductions under the Act. Respondent has it exactly backwards, because such an interpretation is entirely at odds with congressional intent and the Act's very purpose.

Moreover, Respondent errs in suggesting that Rabbi Goodman must first exhaust administrative remedies. Rabbi Goodman is excused from exhausting his administrative remedies because (1) he faces irreparable harm from this violation of his constitutional rights, (2) the issue here is solely one of statutory interpretation, and (3) exhaustion is futile because Rabbi Goodman is past his release date and the BOP appears to have ignored his appeal.

The dispute as joined by the Respondent is a narrow one of statutory construction, with little factual disagreement. Respondent asks the Court to interpret the Act in a manner that effectively negates the earned sentence credits authorized by the Act and the BOP's own implementing regulations and decisions. There is genuine urgency to this issue. Each day that this matter is pending is a day that Rabbi Goodman is incarcerated unlawfully. Petitioner therefore asks

---

[2] *See* 18 U.S.C. § 3621(h)(2) ("so that *every* prisoner has the opportunity to participate in and complete the type and amount of [Programs] . . . they need, . . . the [BOP] shall-- (A) provide such [Programs] . . . for *all* prisoners before [January 15, 2022]; and (B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, ***while prisoners are participating in and completing [Programs] and productive activities***.") (emphasis added).

[3] *See* 18 U.S.C. § 3621(h)(1) (requiring Programs to "begin" on January 15, 2020).

(i) that the Court order his release pending adjudication of this statutory question to immediately abate the ongoing and irreparable harm of his excessive confinement, and (ii) that the writ be granted for the reasons stated both in Rabbi Goodman's Petition and the arguments described below.

## ARGUMENT

**A.     Section 3621 of the Act Is Operative and Is Not Stayed or Postponed by the Two-Year Deadline by Which It Is to Be Extended to "All Prisoners"**

    **1.     Respondent Does Not Dispute That Rabbi Goodman Has Completed Earned Sentencing Credit Programming**

Respondent's Answer does not dispute any of the underlying facts regarding Rabbi Goodman's completion of specific Programming in satisfaction of the Act's requirements. Specifically, Respondent admits affirmatively or is silent in his Answer with respect to the following sworn statements in Petitioner's Affidavit in Support of his Petition ("Pet. Aff.") (ECF No. 1-2):

- Rabbi Goodman is eligible for earned credits under the Act. Answer 5 n.2;

- Rabbi Goodman's Case Manager did an initial needs assessment and found him to be at a "low" risk of recidivism, satisfying the requirement in 18 U.S.C. § 3632(a)(1). Pet. Aff. ¶ 1.3;

- Rabbi Goodman was assessed as a low risk of recidivism for a second time on May 12, 2020, entitling him to 15 days' worth of time credits for every 30 days of Programming. Pet. Aff. ¶¶ 4.2-4.3; Ex. 3; 18 U.S.C. § 3632;

- A Case Manager "determined and assigned [Programming] Activities" for Rabbi Goodman at meetings held on November 26, 2019 and January 20, 2020. Pet. Aff. ¶¶ 2.2; Ex. 1;

- These assignments met the requirements of the Act, and the Case Manager explicitly confirmed to Rabbi Goodman that they qualified under the Act. Pet. Aff. ¶¶ 3-3.2; Ex. 2;

- Rabbi Goodman successfully participated (and continues to participate) in this Programming. Pet. Aff. ¶¶ 3.2-3.3; Ex. 2; and

- Rabbi Goodman has accumulated 240 days of credit, which, under the Act, serves to reduce his sentence by 120 days. Pet. Aff. ¶¶ 4.4; 5.1-5.3; *see* 18 U.S.C. § 3632(4); 3635.

3

Applying these facts to Rabbi Goodman's sentence, he should have been released on July 5, 2020. *See* 18 U.S.C. § 3632(4); 3635; Pet. Aff. ¶ 4.4.

Having conceded or declined to challenge these key facts, Respondent is left arguing that the Petition is "premature" because, under Respondent's tortured interpretation of the Act, "BOP's obligation to implement the evidence-based reduction program and award Earned Time credits has not yet taken effect." Answer 3-5. Respondent's argument is based solely on his strained and illogical interpretation of the "phase-in" period set forth in 18 U.S.C. § 3621(h)(2). Answer 5. This argument is flatly wrong and is belied by the plain language of the statute and the public statements of the Attorney General and the BOP itself. The black-and-white language of Section 3621(h)(2) limits the purpose of this provision to setting a "no later than" date by which the risk and needs assessment system (the "System"), and related credits, must be made available to "every" and "all" prisoners. 18 U.S.C. § 3621(h)(2).[4] This cannot logically be read to counter-productively preclude application to qualifying prisoners in the interim, as Respondent suggests.

### 2. Statutory Interpretation Standard of Review

In cases of statutory interpretation such as this, courts apply the *Chevron* standard, which requires that the courts "give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992) (quotation omitted). The Court should consider "not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. U.S.*, 526 U.S. 1, 6 (1999) (quotation omitted).

---

[4]*See* note 2, *supra.*

"If the statutory language is unambiguous and the statutory scheme is coherent and consistent the inquiry ceases." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969 (2016) (quotation omitted).[5] Here, the words and the intent of the statute are unambiguous and contrary to Respondent's interpretation.

### 3. The Act's Plain Language Entitles Qualifying Prisoners to Receive Credit Beginning January 15, 2020, Not January 15, 2022

Section 3621(h)(1) states that on January 15, 2020, 180 days after the Attorney General completed and released the System, the BOP was to "implement and complete an initial risk and needs assessment for each prisoner" and "begin to assign prisoners to appropriate [Programs]." 18 U.S.C. § 3621(h)(1)(A). The BOP also was required to "begin to expand the effective [Programs] and productive activities it offers and add any new [Programs] and productive activities necessary to effectively implement the [System]." 18 U.S.C. § 3621(h)(1)(B). Finally, the BOP was also to "begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, *while prisoners are participating in and completing the effective [Programs] and productive activities*." 18 U.S.C. § 3621(h)(1)(C) (emphasis added). These requirements all align with the plain language of the phase-in provision, which immediately follows this language and which requires that Programming actively commence on January 15, 2020 and gradually expand to apply to "all" prisoners by the end of the phase-in period on January 15, 2022. The 2022 date is thus *not* the date on which the Programming "takes effect," as Respondent claims; rather, it is the end date by which the BOP must have expanded Programming to cover all inmates.

---

[5] This was the process followed by this Court in reviewing the BOP's interpretation of the Act in *Jones v. Ortiz*, No. 2:19-cv-451, 2019 WL 2376158, at *4 (D.N.J. June 5, 2019).

5

Section 3621(h)(2) then plainly states that the two year "phase-in" period is the outer limit on when BOP must make Programming and the resulting credits available to "all" prisoners. 18 U.S.C. § 3621(h)(2).[6] The section is clear that while the phase-in period is to be used to make the program available for "every" and "all" prisoners, 18 U.S.C. § 3621(h)(2)(A), certain prisoners, such as Rabbi Goodman, already have been permitted and indeed are expected to "participat[e] in and complete[ ] [Programs] and productive activities." 18 U.S.C. § 3621(h)(2)(B). There is no dispute that this is exactly Rabbi Goodman did, in full compliance with the Act. The plain language of the statute expressly and unambiguously expects prisoners to participate in Programs and activities and to accumulate credits as a result. The statute's requirement that the BOP extend the program by January 15, 2022 to cover *all* prisoners is to police the BOP's compliance, not to disincentivize participants. Respondent's claim that the phase-in means that the provision "has not yet take effect" is contrary to the statute's unambiguous language and should be rejected.[7]

**4.    The Placement of the Provision in the Statutory Scheme Is Consistent with**

---

[6] (2) Phase-in.--In order to carry out paragraph (1), so that *every* prisoner has the opportunity to participate in and complete the type and amount of [Programs] or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the [BOP] shall--

  (A) provide such [Programs] and productive activities *for all prisoners* before the date that is 2 years after the date on which the [BOP] completes a risk and needs assessment for each prisoner under paragraph (1)(A); and

  (B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, *while prisoners are participating in and completing [Programs] and productive activities.* (emphasis added).

[7] Notably, Respondent cites no on-point case for his interpretation of the Act. His reliance on *Bowling v. Hudgins*, No. 5:19-cv-285, 2020 WL 1918248 (N.D.W. Va. Mar. 16, 2020), is misplaced and indeed supports Rabbi Goodman's argument. *Bowling* held that a petition seeking time credits that was filed before January 15, 2020 was premature, but the court also found that the claim ripened on that date. *Id.* at *4. *Herring v. Joseph*, No. 4:20-cv-249, 2020 WL 3671375 (N.D. Fla. June 22, 2020) also provides support to Rabbi Goodman, not to Respondent. In *Herring*, the court rejected a claim for credits earned starting in November of 2018, but expressly noted that, under the Act, Programming was to begin on January 15, 2020. *Id.* at *3 (quoting *Allen v. Hendrix*, 2019 WL 8017868, at *2-3 (E.D. Ark. Dec. 13, 2019)).

**Petitioner's Interpretation**

The surrounding sections of the Act work in harmony with Petitioner's interpretation. In addition to Section 3621(h)(1), described above, Section 3621(h)(3) unambiguously describes the "[P]riority during phase-in" and requires that "[d]uring the 2-year period described in paragraph (2)(A), the priority for such programs and activities shall be accorded based on a prisoner's proximity to release date." 18 U.S.C. § 3621(h)(3). Under Respondent's interpretation, there would be no need for "priority" to be assigned during the phase-in, because no one would have access to Programs and activities.

Likewise, Section 104 of the Act allocated $60,000,000 to the BOP for "each of fiscal years 2019 through 2023" to "implement the system under section 3621(h) of title 18, United States Code." First Step Act § 104. If the phase-in stayed implementation of the Act until January 2022, as Respondent maintains, then there would be no reason to have allocated the full $60,000,000 to "implement" the system in each fiscal year from 2019 through 2021. The appropriations pattern, like the rest of the statutory scheme, supports the plain language of the section.

5. **The Interpretation of the Statute by the Attorney General and the BOP is Consistent with Petitioner's Interpretation and Contrary to Respondent's**

On January 15, 2020, the Justice Department released a statement regarding its performance under the Act.[8] It quotes the Attorney General: "*[b]eginning today*, inmates will have even greater incentive to participate in evidence-based programs that prepare them for productive lives after incarceration." *Id.* (emphasis added). The release also states that:

> *[a]s of Jan. 15, 2020*, inmates will be assigned to participate in [Programs] and productive activities based on an initial needs assessment conducted by BOP. *Participation and completion of those assigned programs and activities can lead to placement in pre-release custody or a 12-month sentence reduction under the*

---

[8] *Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation* (Jan 15, 2020) https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act.

7

*First Step Act.*

*Id*. (emphasis added). This statement is unambiguous: it makes no reference whatever to any phase-in, eviscerating Respondent's assertion that no inmate could receive Programming or credit until after the phase-in period. Indeed, the Attorney General's statement makes clear that beginning on January 15, 2020 – not on January 15, 2022 – inmates would be incentivized to participate in programming, and that participation in that programming – again, as of January 15, 2020 – would make inmates eligible for early release.

For its part, the BOP's website contains a set of "Frequently Asked Questions" that includes the question: "When can inmates begin earning time credits?" The answer explains that "FSA Time Credits (FTC) may be earned for completion of assigned [Programs] or productive activities authorized by BOP and successfully completed ***on or after January 15, 2020***."[9] This also is unambiguous, and also provides additional support for Petitioner's plain-language interpretation: the Act allowed inmates with access to programming to begin receiving credits for participation in that programming beginning on January 15, 2020. Tellingly, it matches with Rabbi Goodman's sworn – and unrebutted – statements that he was assigned sentence-reducing Programming and began participating in it at that time. Pet. Aff. ¶¶ 2.2, 3.1-3.3; Exs. 1-2.

**B.     There is No Exhaustion Requirement in this Case**

Respondent further argues that the Petition should be dismissed because Rabbi Goodman allegedly has failed to exhaust his administrative remedies. Answer 6. Because exhaustion in the context of a habeas petition is a prudential consideration and not a jurisdictional one, the Court may consider the Petition regardless of exhaustion. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990). Given Petitioner's unlawful imprisonment and the BOP's failure to respond to his

---

[9] *First Step Act – Frequently Asked Questions: When can inmates begin earning time credits?* (last checked Aug. 17, 2020) https://www.bop.gov/inmates/fsa/faq.jsp#fsa_time_credits.

administrative appeal, as described below, the Court should not dismiss the Petition for failure to exhaust. However, exhaustion is excused here for various independent reasons, including because (1) the prisoner faces irreparable harm from the violation of his constitutional rights and the delay incident to pursuing administrative remedies, (2) the issue presented only pertains to statutory construction, and (3) exhaustion would be futile. *See Madigan v. McCarthy*, 503 U.S. 140, 146-49 (1992); *Kurti v. White*, No. 1:19-cv-2109, 2020 WL 2063871, at *3 (M.D. Pa. Apr. 29, 2020); *Jones,* 2019 WL 2376158, at *4 (Bumb, J.). Rabbi Goodman independently satisfies all three grounds.

### 1. Petitioner Appealed his BP-9 and Was Ignored

As an initial matter, Respondent alleges that "BOP records do not reflect any appeal" from his denial of Petitioner's BP-9. Answer 3, 8; Declaration of Christina Clark (ECF No. 4-2) ("Clark Decl.") ¶ 5. This is demonstrably incorrect. Rabbi Goodman attests that he appealed that denial to the Regional Director in a document sent to the Regional Director on June 10, 2020 by certified mail and return receipt. Reply Decl. ¶¶ 6-7; Ex. 1. When Rabbi Goodman attempted to sign the outgoing legal mail log book regarding the sending of his appeal to the Regional Director, a Counselor attempted to prevent him from making the entry. Reply Decl. ¶ 7.

In fact, as the certified mail receipt and the prison records show, the appeal was sent on June 11, 2020 and was received on June 13, 2020. Reply Decl. ¶ 8; Ex. 2. Despite Respondent's claim, prison records appear to show that the appeal was entered into the SENTRY system on June 20, 2020 and that a response was due July 20, 2020. Reply Decl. ¶ 9; Ex. 3. The BOP has provided no response to Rabbi Goodman's submitted appeal despite being required to do so. Instead, Respondent appears to be disclaiming that any appeal was lodged, again demonstrating the futility of any reliance on the BOP's administrative process.

### 2. Rabbi Goodman Faces Irreparable Harm Due to His Unlawful Imprisonment and the Resulting Violation of his Constitutional Rights

Rabbi Goodman has already earned sufficient credits under the Act to have earned his release on July 5, 2020. As such, he faces irreparable harm every day that his unlawful imprisonment continues. *See U. S. ex rel. Taylor v. Redman*, 500 F. Supp. 453, 460 (D. Del. 1980) ("continued unlawful incarceration" subjects prisoner to "immediate irreparable injury").

This unlawful imprisonment also violates his constitutional rights, including his right to liberty under the Fifth Amendment. *See* Pet. 5. "Deprivation of a constitutional right alone constitutes irreparable harm as a matter of law, and no further showing of irreparable harm is necessary." *Beattie v. Line Mountain Sch. Dist.*, 992 F. Supp. 2d 384, 396 (M.D. Pa. 2014); *Buck v. Stankovic*, 485 F. Supp. 2d 576, 586 (M.D. Pa. 2007). For these reasons, the Court should excuse any need to exhaust due to the existence of irreparable harm.

### 3. The Issue Presented Is Limited Only to the Interpretation of 18 U.S.C. § 3621(h)

Respondent contests only the interpretation of the "phase-in" provision contained in 18 U.S.C. § 3621(h)(2) of the Act. Answer 3-6. Similarly, the only issue on which Respondent relied in denying Petitioner's administrative BP-9 request was that "programs and productive activities" under the Act will not be provided until after the two-year phase-in period. Clark Decl. Ex. 2. This is a pure question of statutory interpretation, one that turns solely on when the phase-in provision went into effect. These issues, explained in detail above, relate exclusively to questions of interpretation. As such, there is no requirement to exhaust administrative remedies. *See Jones*, 2019 WL 2376158, at \*4 (Bumb, J.) (where issues related to specific provisions of the Act and "BOP consistently denied relief based on its interpretation of [the relevant section] of the Act," the "issues presented in the habeas petition fit within the 'statutory construction' exception

to exhaustion").

### 4. Additional Administrative Appeals Would be Futile

As with the issue of irreparable harm, futility is established from the fact of Petitioner's continued imprisonment past his release date. BOP's handling of Petitioner's appeal, including losing track of it and not responding to it, also proves futility. Given these facts and Petitioner's release date, Clark Decl. Ex. 3 at 1, pursuing further administrative remedies would be futile, especially given BOP's current pace and the admitted delays in the process due to COVID-19. Answer 3 n.1.

### B. The Court Should Release Rabbi Goodman During the Pendency of This Petition, Which It Also Should Hear on an Expedited Schedule

Rabbi Goodman has presented undisputed evidence that he earned credits under the Act, which warranted his release on July 5, 2020, almost forty-five days ago. Pet. Aff. ¶¶ 4.4; 7.2. As a result, he suffers irreparable harm each additional day that he spends in prison, including while his petition is pending before the Court. *See Redman*, 500 F. Supp. at 460.

To minimize this harm, Petitioner respectfully requests that Rabbi Goodman be released immediately, pending resolution of this litigation. Should his arguments ultimately fail to persuade the Court, Rabbi Goodman understands that he will be remanded to serve any sentence the Court determines to be remaining. The Court has the authority to provide conditional release in the context of a habeas petition. *Hensley v. Municipal Court*, 411 U.S. 345, 352 (1973) (habeas authority includes the power to "order [a] petitioner's release pending consideration of his habeas corpus claim") (citation omitted).

## CONCLUSION

For the foregoing reasons, the Petition should be granted and a writ should issue. In the alternative, the Court should issue a conditional writ releasing Petitioner while it considers these issues.

Dated: August 18, 2020
Newark, New Jersey

Respectfully submitted,

s/ Thomas R .Valen
Thomas R. Valen
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
Email: tvalen@gibbonslaw.com

E. Danya Perry*
Samidh Guha*
Peter A. Gwynne*
**PERRY GUHA LLP**
35 East 62nd Street
New York, New York 10065
Telephone: (212) 399-8330
Facsimile: (212) 399-8331
Email: sguha@perryguha.com
Email: dperry@perryguha.com
Email: gbarchini@perryguha.com

*Attorneys for Petitioner Aryeh Goodman*
*\*Application for pro hac vice forthcoming*