```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                          CAMDEN VICINAGE
_____
                                  :
ARYEH GOODMAN,                    :
                                  :    Civ. No. 20-7582 (RMB)
             Petitioner           :
                                  :
        v.                        :         **OPINION**
                                  :
DAVID ORTIZ, Warden,              :
                                  :
             Respondent           :
_____      :
```

APPEARANCES

E. Danya Perry, Esq.
Samidh Guha, Esq.
Peter A. Gwynne, Esq.
PERRY GUHA LLP
35 East 62nd Street
New York, New York 10065

Thomas R. Valen
GIBBONS, PC
One Gateway Center
Newark, NJ 07102-5310

    On behalf of Petitioner

Kristin L. Vassallo, AUSA
Office of the U.S. Attorney
District of New Jersey
970 Broad Street
Newark, NJ 07102

John Andrew Ruymann, AUSA
Office of the U.S. Attorney
District of New Jersey
402 East State Street, Suite 430
Trenton, NJ 08608

    On behalf of Respondent

BUMB, United States District Judge

This matter comes before the Court upon Petitioner Rabbi Aryeh Goodman's pro se petition for writ of habeas corpus under 28 U.S.C. § 2241, (Pet., Dkt. No. 1), Respondent's Answer, (Answer, Dkt. No. 4), and Petitioner's counseled Reply (Reply, Dkt. No. 9).

Petitioner, a federal inmate at FCI Fort Dix, alleges that the Federal Bureau of Prisons ("BOP") has failed to apply his "Earned Time" credits for "Evidence-Based Recidivism Reduction Training" under the First Step Act, 18 U.S.C. § 3632(d)(4)(A), a recently enacted statute aimed at assisting prisoners' reintegration into society. Petitioner contends that the BOP should have given him credit for his participation in the training program and he should have therefore been released on July 5, 2020. (Pet., Dkt. No. 1, Petr's Aff., Dkt. No. 1-2.) The BOP disagrees, arguing that its obligation to apply Earned Time credits does not take effect until the end of the phase-in period, which is January 15, 2022. (Answer, Dkt. No. 4.)[1]

For the reasons set forth below, the Court will grant habeas relief.

---

[1] Jurisdiction is proper under 28 U.S.C. § 2241 because Petitioner challenges the duration of his confinement. Leamver v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).

I.  BACKGROUND

In April 2019, Petitioner pled guilty before the Honorable Chief Judge Freda Wolfson to interstate travel in aid of a racketeering enterprise, in violation of 18 U.S.C. § 1952(a)(3). United States v. Goodman, No. 19-CR-265 (FLW), (D.N.J., Dkt. No. 29.) On August 28, 2019, Chief Judge Wolfson sentenced Petitioner to an eighteen-month term of imprisonment. (Declaration of Christina Clark ("Clark Decl."), Ex. A, Dkt. No. 4-3.) Assuming Petitioner receives all good time credits available to him, but none of the Earned Time credits awarded under the First Step Act, which are at issue here, his projected release date is January 20, 2021. (Id.)

As noted, the First Step Act offered prisoners an opportunity to earn credit towards their sentences.  Under the Act, the BOP created a risk and needs assessment system, titled "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN,") in compliance with the First Step Act, 18 U.S.C. § 3632(a). (Answer at 3-4, Dkt. No. 4.) The First Step Act required the BOP, among other things, to "determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly…." 18 U.S.C.A. § 3632(a)(3).

Pursuant to 18 U.S.C. § 3632(d)(4), prisoners shall earn time credits for participation in such programs:

>      (4) Time credits.—
>
>         (A) In general.--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
>            (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
>            (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
>         (B) Availability.--A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed—
>
>            (i) prior to the date of enactment of this subchapter; or
>
>            (ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a).

Petitioner asserts that Respondent either admitted or was silent to the following sworn statements in Petitioner's Affidavit in Support of his Petition ("Pet. Aff.") (Dkt. No. 1-2):

- Petitioner is eligible for earned credits under the First Step Act ("the Act"). (Answer at 5 n.2, Dkt. No. 4);

4

- Petitioner's Case Manager did an initial needs assessment and found him to be at a "low" risk of recidivism, satisfying the requirement in 18 U.S.C. § 3632(a)(1). (Pet. Aff. ¶1.3, Dkt. No. 1-2);

- Petitioner was assessed as a low risk of recidivism for a second time on May 12, 2020, entitling him to 15 days of time credits for every 30 days of Programming under 18 U.S.C. § 3632. (Pet. Aff. ¶¶ 4.2-4.3, Dkt. No. 1-2; Ex. 3, Dkt. No. 1-1 at 10);

- A Case Manager "determined and assigned [Programming] Activities" for Petitioner at meetings held on November 26, 2019 and January 20, 2020. (Pet. Aff. ¶¶ 2.2, Dkt. No. 1-2; Ex. 1, Dkt. No. 1-1 at 1-2);

- These assignments met the requirements of the Act, and the Case Manager explicitly confirmed to Petitioner that they qualified under the Act. (Pet. Aff. ¶¶ 3-3.2, Dkt. No. 1-2; Ex. 2, Dkt. No. 1-1 at 3-9);

- Petitioner successfully participated (and continues to participate) in this programming. (Id.)

- Petitioner has accumulated 240 days of credit, which under 18 U.S.C. §§ 3632(d)(4), 3635 serves to reduce his sentence by 120 days. (Pet. Aff. ¶¶ 4.4; 5.1-5.3, Dkt. No. 1-2.)

- If Petitioner's days of credit are applied upon program completion, under 18 U.S.C. §§ 3632(d)(4), 3635, he should have been released on July 5, 2020. (Pet. Aff. ¶ 4.4, Dkt. No. 1-2.)

Thus, because the BOP does not dispute that Petitioner earned the time credits, Petitioner seeks immediate application of those credits under the First Step Act.

The BOP makes two arguments in opposition to Petitioner's request for habeas relief. First, it contends that Petitioner failed to exhaust his administrative remedies. Second, it argues

5

that the BOP is not required to award any PATTERN earned credit until the two-year phase-in period under the statute has expired, to wit, January 15, 2022. The Court turns to each argument.

II. DISCUSSION

    A.    <u>Exhaustion of Administrative Remedies</u>

The parties acknowledge that there is an administrative remedy exhaustion requirement applicable to petitions for writ of habeas corpus under 28 U.S.C. § 2241, but that there are exceptions to the requirement. See <u>Cerverizzo v. Yost</u>, 380 F. App'x 115, 116 (3d Cir. 2010) (citing <u>Woodall v. Fed. Bureau of Prisons</u>, 432 F.3d 235, 239 n. 2 (3d Cir. 2005); <u>Schandelmeier v. Cunningham</u>, 819 F.2d 52, 53 (3d Cir. 1986); <u>Gambino v. Morris</u>, 134 F.3d 156, 171 (3d Cir. 1998) (Roth, J., concurring)). Here, there is no dispute that Petitioner did not exhaust the final level of the BOP administrative remedy program prior to filing his habeas petition.

This case, however, presents a narrow dispute of statutory construction which is exempt from the exhaustion requirement. See <u>Coleman v. U.S. Parole Comm'n</u>, 644 F. App'x 159, 162 (3d Cir. 2016) ("exhaustion is not required with regard to claims which turn only on statutory construction") (citing <u>Harris v. Martin</u>, 792 F.2d 52, 54 n. 2 (3d Cir. 1986)). Moreover, because the Court finds habeas relief should be granted, exhaustion is excused. See <u>Gambino</u>, 134 F.3d at 171 ("exhaustion is not required when the petitioner demonstrates that it is futile.")

6

B.     The First Step Act PATTERN Program

"The First Step Act, Pub. L. No. 115-015, 132 Stat. 015 (2018), signed into law on December 21, 2018, provides comprehensive federal criminal justice reform by, inter alia, creating a new risk and needs assessment system to provide appropriate programming for prisoners…." Musgrove v. Ortiz, No. CV 19-5222 (NLH), 2019 WL 2240563, at *2 (D.N.J. May 24, 2019). The First Step Act added the following relevant subsections to 18 U.S.C. § 3621:

> (h)  Implementation of risk and needs assessment system.—
>
> (1) In general.--Not later than 180 days after the Attorney General completes and releases the risk and needs assessment system [release occurred on July 19, 2019] (referred to in this subsection as the "System") developed under subchapter D, the Director of the Bureau of Prisons shall, in accordance with that subchapter—
>
> (A) implement and complete the initial intake risk and needs assessment for each prisoner (including for each prisoner who was a prisoner prior to the effective date of this subsection), regardless of the prisoner's length of imposed term of imprisonment, and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination;
>
> (B) begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers and add any new evidence-based recidivism reduction programs and productive activities necessary to

7

      effectively implement the System; and

      (C) begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and completing the effective evidence-based recidivism reduction programs and productive activities.

(2) Phase-in.--In order to carry out paragraph (1), so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the Bureau of Prisons shall—

      (A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and

      (B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.

(3) Priority during phase-in.--During the 2-year period described in paragraph (2)(A), the priority for such programs and activities shall be accorded based on a prisoner's proximity to release date.

(4) Preliminary expansion of evidence-based recidivism reduction programs and authority to use incentives.--Beginning on the date of enactment of this subsection, the Bureau of Prisons may begin to expand any evidence-

8

> based recidivism reduction programs and productive activities that exist at a prison as of such date, and may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D.

18 U.S.C. § 3621(h)(1-4). Thus, according to § 3621(h), the BOP was required to create the risk and needs assessment system by January 15, 2020, begin implementing it on that date, and with full implementation complete on January 15, 2022.

### 1. *Respondent's Argument*

Respondent contends that the BOP met the First Step Act's requirement, on July 19, 2019, to develop a risk and needs assessment system, "PATTERN" within 210 days of the law's enactment on December 18, 2018. (Answer at 3-4, Dkt. No. 4.) By January 15, 2020, the BOP implemented and completed an initial intake risk and needs assessment for each prisoner and began to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination, within 180 days of PATTERN's release date. (Answer at 5, citing 18 U.S.C. § 3621(h)(1)(A)). Respondent, however, also contends that the statute "gives the BOP two years after it completes the risk and needs assessment for each prisoner to 'phase in' the program implementation," including by awarding "Earned Time" credits, that is, by January 15, 2022. (Answer at 5, citing Herring v. Joseph, 2020 WL 3671375, at *3 (N.D. Fla June 22, 2020.) Therefore, the BOP concludes, its obligation to

9

implement the evidence-based reduction program and award Earned Time credits "has not yet taken effect[.]" (Answer at 5, citing Bowling v. Hudgins, No. 19-285, 2020 WL 1918248, at *4 (N.D.W. Va. Mar. 16, 2020) (same), report and recommendation adopted, 2020 WL 1917490 (N.D.W. Va. Apr. 20, 2020). In sum, Respondent asserts that Congress rationally chose to give BOP a reasonable time to develop and implement a new approach to award Earned Time credit to a prisoner. (Answer at 5.)

      2.   *Petitioner's Argument*

Petitioner agrees that the plain language of 18 U.S.C. § 3621(h)(1) required the BOP to begin implementing the risk and needs assessment program on January 15, 2020. (Reply at 5, Dkt. No. 9.) This is not in dispute. According to Petitioner, however, under § 3621(h)(2), the program must "gradually expand to apply to 'all' prisoners by the end of the phase-in period on January 15, 2022." (Id.) Thus, January 15, 2022 is not the date when the program "takes effect," as Respondent claims but it is the "outer limit on when BOP must make programming and the resulting credits available to 'all' prisoners." (Reply at 6, citing 18 U.S.C. § 3621(h)(2))

Petitioner specifically relies on the text of § 3621(h)(3): "[P]riority during phase-in," which requires that "[d]uring the 2-year period described in paragraph (2)(A), the priority for such programs and activities shall be accorded based on a prisoner's

10

proximity to release date." (Reply at 7, Dkt. No. 4.) Under Respondent's faulty interpretation, Petitioner argues, there would not be "priority" assigned during the phase-in because no one would have access to programs, activities or incentives. (Id.) In other words, such interpretation is at odds with the plain language of the statute.

Finally, Petitioner cites to statements by the Attorney General and the BOP which are consistent with awarding credit for risk recidivism programming prior to January 15, 2022. (Reply at 7-8.) First, on January 15, 2020, the Justice Department released a statement regarding its performance under the Act:

> Beginning today, inmates will have even greater incentive to participate in evidence-based programs that prepare them for productive lives after incarceration … As of Jan. 15, 2020, inmates will be assigned to participate in [Programs] based on an initial needs assessment … Participation and completion of those assigned programs and activities can lead to placement in pre-release custody or a 12-month sentence reduction under the First Step Act.

(Id.)[2] Further, "Frequently Asked Questions" on the BOP's website provides:

> When can inmates begin earning time credits?
>
> FSA Time Credits (FTC) may be earned for

---

[2] The Justice Department Memo, "Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation (Jan 15, 2020)" is available at https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act

11

> completion of assigned [Programs] or productive activities authorized by BOP and successfully completed on or after January 15, 2020.

(Reply at 8, Dkt. No. 9.)[3]

### C. Statutory Construction of the Act

When embarking on a task of statutory construction "words generally should be "interpreted as taking their ordinary, contemporary, common meaning ... at the time Congress enacted the statute.'" Wisconsin Cent. Ltd. v. United States, 138 S. Ct. 2067, 2074 (2018) (quoting Perrin v. U.S., 444 U.S. 37, 42 (1979)). Courts must also bear in mind the "'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" Util. Air Regulatory Grp. v. E.P.A., 573 U.S. 302, 319–20 (2014) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000)). "When the words of a statute are unambiguous … judicial inquiry is complete." Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254 (1992) (quotation omitted). Agencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always 'give effect to the unambiguously expressed intent of Congress.'" Util. Air Regulatory Grp., 573 U.S. at 326 (quoting National Assn. of Home Builders v. Defenders

---

[3] "First Step Act – Frequently Asked Questions: When can inmates begin earning time credits?" available at https://www.bop.gov/inmates/fsa/faq.jsp#fsa_time_credits.

12

of Wildlife, 551 U.S. 644, 665 (2007) (quoting Chevron, U.S.A, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984)).

Turning to the statutory language here, first, 18 U.S.C. § 3621(h)(2) requires phase-in of the risk recidivism program. The ordinary meaning of "phase-in" is to implement gradually. The purpose of phasing in the program is expressly defined by § 3621(h)(2) "so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need."

Next, to determine whether the BOP is required to apply Petitioner's Earned Time credits before the January 15, 2022 completion date for the phase-in, the "'statute must be read in [its] context and with a view to [its] place in the overall statutory scheme.'" Util. Air Regulatory Grp., 573 U.S. at 320 (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000)). In this regard, Section 3621(h)(1)(C) requires the BOP to "begin to implement … tools necessary to effectively implement the System over time, *while prisoners are participating in and completing* the effective evidence-based recidivism reduction programs and productive activities" (emphasis added.) Clearly, as the plain language states, this statutory provision anticipates that some prisoners will complete the programs within the 2-year phase-in period.

Furthermore, Section 3621(h)(3) instructs that "[d]uring the 2-year period described in paragraph (2)(A), the priority for such programs and activities shall be accorded based on a prisoner's proximity to release date." Thus by making it a priority to provide the programs to prisoners based on proximity to their release dates, the statute makes it clear that prisoners who earned sufficient time credits <u>during the phase-in period</u> could be released prior to the end-date for the two-year phase-in.

Subsection (h)(4) of § 3621 supports this interpretation. It provides, in relevant part (emphasis added):

> the Bureau of Prisons may begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison **as of such date [January 15, 2020], and may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D.**

Thus, while the statute does not explicitly provide a date when the BOP *must* apply a prisoner's earned credits from participation in recidivism reduction programs, it does require a 2-year phase-in, not only of participation in the programs, but of incentives for participation in the programs.

The Court finds no evidence in the statutory framework for delaying application of incentives earned by all prisoners during the phase-in program until January 15, 2022, the final date when BOP must complete the phase-in with respect to "all prisoners."

14

See § 3621(h)(2)(A). Even the use of the words "all prisoners" indicates that all prisoners must be afforded the PATTERN program but does not exclude that some prisoners will participate in, earn incentives and complete the program before the end of the phase-in period. Indeed, the Attorney General's January 15, 2020 memo and BOP's "Frequently Asked Questions" describing the PATTERN program incentives are consistent with this interpretation.[4] The ordinary meaning of "phase-in" combined with analysis of the statutory framework of § 3621(h) unambiguously supports the conclusion that the BOP must gradually implement the risk recidivism program, including the priority application of incentives to prisoners whose release dates are nearer, such as Petitioner.

III. CONCLUSION

The BOP's position that a prisoner can complete the PATTERN program before January 15, 2022 with no benefit to the prisoner is contrary to the statutory language, not to mention the unfairness of such a result. Therefore, the Court concludes that Petitioner is entitled to habeas relief. The Court will direct the BOP to immediately apply Petitioner's Earned Time credit of 120 days in an accompanying Order.

---

[4] See supra notes 2 and 3.

15

Date: **August 25, 2020**

                                                 s/Renée Marie Bumb
                                                 **RENÉE MARIE BUMB**
                                                 **UNITED STATES DISTRICT JUDGE**